# COULTER v. LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

No. 244. Argued November 29, 30, 1904.—Decided February 20, 1905.

A railroad company in Kentucky claimed as its only ground of Federal jurisdiction in an action in the Circuit Court of the United States against members of the state board of valuation and assessment that under the tax laws of the State it was deprived of equal protection of the laws contrary to the Fourteenth Amendment, because while the law of the State required all property to be taxed at its fair cash value there was a uniform and general undervaluation of other property but the company's property was taxed at its full value. There was conflicting testimony as to the valuations, most of the members of the board testifying that they tried in good faith to reach fair cash values. *Held,* that:

The court will not intervene merely on the ground of a mistake in judgment on the part of the officer to whom the duty of assessment was entrusted by the law.

It is not beyond the power of a State, so far as the Federal Constitution is concerned, to tax the franchise of a corporation at a different rate from the tangible property in the State.

Where the only constitutional ground on which the complainant can come into the Circuit Court obviously fails the court should be very cautious in interfering with the State's administration of its taxes upon other considerations which would not have given it jurisdiction.

THE facts are stated in the opinion.

*Mr. Wm. O. Davis* and *Mr. Henry L. Stone,* with whom *Mr. Napoleon B. Hays,* Attorney General of the State of Kentucky, was on the brief, for appellants:

The Circuit Court had no jurisdiction of this action.

The state board had made the final assessment of appellee's franchise, and the auditor had given appellee the statutory notice thereof, and it is not shown that appellants, being the auditor, treasurer, and secretary of state, constituting said board, had any further statutory power or authority to enforce the collection of the unpaid part of the state taxes on said assessment. Hence, appellee's suit was against the State without its consent, and in violation of the Eleventh Amendment. *Louisiana* v. *Jumel,* 107 U. S. 711; *Ex parte Ayres,* 123 U. S. 443; *Hans* v. *Louisiana,* 134 U. S. 1; *Coulter* v. *Weir,* 127 Fed. Rep. 897; *Fitts* v. *McGhee,* 172 U. S. 516; *Arbuckle* v. *Blackburn,* 113 Fed. Rep. 616.

The bill alleges that the amount in controversy in this action, without considering the local taxes, exceeds $2,000, but there is no allegation stating the amount or value of the local taxes due the counties, cities, towns, and taxing districts exceed the sum of $2,000. *Walter* v. *Northwestern Railroad Co.,* 147 U. S. 370; *Fishback* v. *Western Union Telegraph Co.,* 161 U. S. 96; *Coulter* v. *Fargo,* 127 Fed. Rep. 912.

There being no diverse citizenship between the parties, the bill does not show jurisdiction in the Circuit Court, on account of the alleged denial of the equal protection of the laws within the meaning of the Fourteenth Amendment. *Nash., Chatt. & St. L. Ry.* v. *Taylor,* 86 Fed. Rep. 168; *R. R. & Telephone Co.* v. *Board of Equalization,* 85 Fed. Rep. 302; *Taylor* v. *Louisville & Nashville R. R. Co.,* 88 Fed. Rep. 350; *Louisville Trust Co.* v. *Stone,* 107 Fed. Rep. 305; *Cummings* v. *Merchants National Bank,* 101 U. S. 153; *Albuquerque Bank* v. *Perea,* 147 U. S. 87.

The proof shows the assessment of appellee's franchise had become final before this action was instituted.

The bill as amended does not state facts sufficient to entitle complainant to any relief in equity.

The allegation in the amended bill that said assessors "uniformly" assessed such property below its value for the year 1902 is not sufficient to bring this case within the rule

announced in this class of cases by the Federal courts. Cases *supra* and *German National Bank* v. *Kimball,* 103 U. S. 732; *Pelton* v. *Commercial National Bank,* 101 U. S. 143; *New York ex rel.* v. *Barker,* 179 U. S. 279; *State ex rel.* v. *Western Union Telegraph Co.,* 165 Missouri, 504; *West. Un. Tel. Co.* v. *Missouri,* 187 U. S. 412; *Exchange National Bank* v. *Miller,* 19 Fed. Rep. 372.

The county assessors did not habitually and intentionally nor fraudulently assess the property of individuals and corporations, not required to report to the board of valuation and assessment, at less than its fair cash value; nor did the board of equalization intentionally or fraudulently equalize the assessments of such property subject to equalization on the basis of eighty per cent of its cash value for the year 1902.

If the allegations are sufficient to give jurisdiction to the Circuit Court, and to constitute a cause of action, then the proof falls short of what is required by the decisions of the Federal courts in this class of cases before an injunction will be granted interfering with the collection of the public revenues of a State. *Cin. So. Railway* v. *Guenther,* 19 Fed. Rep. 398; *Taylor* v. *Louisville & Nashville R. R. Co.,* 88 Fed. Rep. 373; *New York ex rel.* v. *Barker,* 179 U. S. 279.

If there was any actual discrimination between the assessments of property by the local assessing authorities as equalized and those of appellee's franchise, it was sporadic, and not designed or intentional.

The presumption is that the sworn assessing officers discharged their duties faithfully and as required by law, until the contrary is clearly shown by a preponderance of the competent and relevant evidence.

The franchise or intangible property of the complainant was not in fact assessed by the board of valuation and assessment at its full cash value, or at a sum in excess of eighty per cent of such value for 1902. To ascertain the value of the franchise or intangible property of a public service corporation two methods have been followed by the board of valua-

tion and assessment, and approved by the courts, to wit: the capitalization plan, whereby the total value of all the property of the corporation is fixed at a sum which at six per cent will produce the amount of the net income or earnings; the stock and bond plan, whereby the total value of all the property of the corporation is fixed at the market value of the shares of stock and bonds. *Henderson Bridge Co.* v. *Commonwealth,* 99 Kentucky, 641; *S. C.,* 166 U. S. 152; *Louisville Railway Co.* v. *Commonwealth,* 105 Kentucky, 722; *Adams Express Co.* v. *Kentucky,* 166 U. S. 180; *State Railroad Tax Cases,* 92 U. S. 575; *Commonwealth* v. *Covington & Cin. Bridge Co.,* 70 S. W. Rep. 849; *West. Un. Tel. Co.* v. *Taggart,* 163 U. S. 1.

Under either of these plans the value of the franchise or intangible property of the corporation may be ascertained by deducting from such total value the assessed value of its tangible property, the remainder being considered the value of its franchise or intangible property.

The share of Kentucky in the assessment of appellee's property was more than twenty-six per cent, the percentage adopted by the board of valuation and assessment, which erroneously included as a part of the lines of the road that appellee "operated, owned, leased or controlled" in that State and elsewhere 1,044.21 miles of road belonging to other companies, in which appellee merely owned one-half or a majority of the shares of stock. The road of another company in which appellee owns a majority of the stock is not "controlled" by the appellee within the meaning of the statute. *United States* v. *Northern Securities Co.,* 120 Fed. Rep. 721; *Pullman Palace Car Co.* v. *Mo. Pac. Railway Co.,* 115 U. S. 587; *Porter* v. *Pittsburg &c. Co.,* 120 U. S. 670; *Am. Preservers Co.* v. *Norris,* 43 Fed. Rep. 714; *Exchange Bank* v. *Macon &c. Co.,* 97 Georgia, 7; *Atchison &c. Ry.* v. *Cochran,* 43 Kansas, 234; *Louisville Gas Co.* v. *Kaufman,* 105 Kentucky, 131.

The complainant, by reason of the action of the county assessors and board of equalization or the board of valuation

and assessment, has not been discriminated against or denied the equal protection of the laws within the meaning of the Fourteenth Amendment to the Constitution of the United States. *King* v. *Mullins,* 171 U. S. 436; Judson on Taxation, §§ 437, 562; *Head Money Cases,* 112 U. S. 595; *National Bank* v. *Baltimore,* 100 Fed. Rep. 27; *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 233; *Merchants' &c. Bank* v. *Pennsylvania,* 167 U. S. 464; *Col. & So. R. Co.* v. *Wright,* 151 U. S. 478; *Florida Central &c. R. Co.* v. *Reynolds,* 183 U. S. 476; *Kentucky Railroad Cases,* 115 U. S. 321; *Charlotte C. & A. R. Co.* v. *Gibbes,* 142 U. S. 386; *Wagoner* v. *Loomis,* 37 Ohio St. 571; *Lowell* v. *County Commissioners,* 152 Massachusetts, 375; *Cent. Railroad Co.* v. *State Board,* 48 N. J. L. 7; *Louisville Railway Co.* v. *Commonwealth,* 105 Kentucky, 710.

*Mr. James P. Helm,* with whom *Mr. Helm Bruce* was on the brief, for appellee:

A State cannot through its administrative officers, intentionally, uniformly and systematically make some of its citizens bear, proportionately to their wealth, one-fifth more of the burdens of state government than it requires of all the rest of its citizens. Or, putting the proposition a little differently, it is not competent to the State to make a certain class of its citizens pay on the value of their property one dollar on the hundred, for the support of the State, and require of all the rest of the citizens that they should pay only eighty cents on the hundred dollars, for the same purpose. It cannot do this directly, and it ought to require no argument to prove that it cannot do it indirectly. In other words, great principles do not depend upon mere form, but on substance.

The lower court after a prolonged and most careful consideration of the evidence finds no room to doubt that the condition was the result of design. The language of the court is that all the property in the State subject to equalization, had been "systematically, habitually and intentionally undervalued to at least twenty per cent for the year 1902, first by

the local assessing officials and then by the equalizers." *Spalding* v. *Hill*, 86 Kentucky, 656; see opinion of Taft, J., in *Taylor* v. *Louisville & Nashville Ry. Co.*, 88 Fed. Rep. 364, and authorities there referred to.

As to the effect of practical construction by those whose duty it is to execute a statute, see *Harrison* v. *Commonwealth*, 83 Kentucky, 163; *Louisville* v. *Barbour*, 83 Kentucky, 95; *Clark's Run* v. *Commonwealth*, 96 Kentucky, 532; *City* v. *Garr*, 97 Kentucky, 588.

As to the meaning of the word "controlled," see *United States* v. *Northern Securities Co.*, 120 Fed. Rep. 721, and cases cited.

Appellants insist that the board of valuation and assessment assessed the property of the appellee at less than its real value. It surely could not be contended by the appellee that they were guilty of fraud or wrongdoing, in making the assessment, and it is not so contended. On the contrary they say that they in good faith endeavor to assess the property at its full and fair cash value. Under these circumstances the cases of *P., C., C. &c. R. Co.* v. *Backus*, 154 U. S. 434; *West. Un. Tel. Co.* v. *Taggart*, 163 U. S. 1; *Adams Express Co.* v. *Ohio*, 165 U. S. 2, are conclusive that whenever a question of fact is thus submitted to the determination of a special tribunal, its decision creates something more than a mere presumption of fact, and if such determination comes into inquiry before the courts, it cannot be overthrown by evidence going only to show that the fact was otherwise than was found and determined. On this branch of the case we do not feel justified in going into the evidence in detail for the purpose of showing that the valuation of the appellee's property fixed by the board of valuation and assessment was a full value. That question is fully discussed by the lower court in its opinion.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill brought by the railroad company, appellee, a

Kentucky corporation, against citizens of Kentucky, the members of the state board of valuation and assessment, and respectively auditor of public accounts, treasurer and secretary of state. The only ground of jurisdiction alleged is that under the tax laws of the State of Kentucky, as administered by its executive officers, the railroad company is deprived of the equal protection of the laws contrary to the Fourteenth Amendment. The constitution of the State requires all property not exempted from taxation to be assessed at its fair cash value, but the bill alleges that the county assessors uniformly assess the property assessed by them, which is the great body of tangible property in the State, below its cash value. It alleges that, in like manner, the board of equalization equalizes the county assessments at a percentage not above eighty per cent of the fair cash value of the property taxed. On the other hand the defendants, who assess the franchise tax on the railroad company, are alleged to have assessed the company's property in Kentucky at its full value, viz., $33,788,724.50, for the year 1902, and then, deducting the tangible property locally taxed, $23,103,825, to have made the taxable franchise $10,774,899.50. Whereas, if eighty per cent of the value of the company's property had been taken, then, deducting as before, the taxable franchise would be only a little over four million dollars.

The railroad company contends that when there is a uniform and general undervaluation of other property, then the only way in which the company can be put on an equality with other taxpayers is by a similar undervaluation in its case. The railroad company contends further that although this contravenes the letter of the statute, the requirement of equality so far outweighs the requirement of a tax on the full value of property, that if by misconduct elsewhere both cannot be observed, the rule of equality must prevail. It should be mentioned that the franchise tax is both state and local, and that after the same has been laid and apportioned between the State and county, etc., by the defendants, the

state auditor, who is one of them, certifies to the county clerks their proportion of the tax. The bill prays for an injunction against such an apportionment and certification, and also against collection by the officers of the State. There was a general demurrer to the bill and an answer and replication. The demurrer was overruled. Much evidence was taken, and at the final hearing a decree was entered by the Circuit Court enjoining the defendants as prayed, and requiring the defendant Hager, treasurer of the State, to execute a receipt in full of the state taxes on the franchise for 1902, the plaintiff having paid the sum which was due on its view of the case. 131 Fed. Rep. 282. The defendants appealed to this court. It may be assumed from an affidavit filed, if not from the pleadings, that the amount in controversy is over $2,000. See *United States* v. *Trans-Missouri Freight Association*, 166 U. S. 290, 310.

From a consideration of different kinds of evidence the Circuit Court reached the conclusion that the county assessors had systematically and intentionally undervalued the property assessed by them. In the first place it found a settled habit of undervaluing, recognized by the legislature and the state court, before the adoption of the Constitution of 1891, which required the fair cash value to be assessed. It found that while the value of land had increased or, at least, had not diminished since 1891, the assessments had varied very little, while those of 1891 were not more than seventy per cent of the value at any time. It considered testimony that from 1893 to 1896 the assessments were equalized at seventy per cent, following earlier statutes, notwithstanding the constitution of 1891. It then compared tabulated statements of sales in the different counties, which were required by statute to be furnished to the board of equalization, with the local assessments and with the results reached by the last named board. It thus found an additional and independent reason for believing that there was systematic undervaluation in the counties, and it inferred from comparisons and from testimony to that effect

that the board paid little attention to the tabulated statements, even on a basis of eighty per cent, but really was governed by the assessment of the previous year. Finally it confirmed its conclusions by direct testimony as to the practice in certain counties and the rules practically adopted by the board. The reasoning is careful and elaborate and cannot be read without an impression that probably it is correct to the extent of establishing a general undervaluation of land.

On the other hand, there was testimony that the statements of sales did not afford satisfactory evidence of average values, or at least, for various reasons, were not regarded by the board of equalization as affording it. Most of the members of the board testified that they tried in good faith to reach fair cash values, and there were many affidavits to a like effect as to the past and present conduct of the county assessors. It was sworn that, so far as percentages of the reported sales were used, they were used on an estimate of what proportion actual values would bear to the sums named in the deeds. The Circuit Court, while regarding it as the condition of equitable relief that the property other than that of the plaintiff should have been undervalued systematically and intentionally, hardly dealt with this evidence in its bearing on the question of intent. Yet, of course, no court would venture to intervene merely on the ground of a mistake of judgment on the part of the officer to whom the duty of assessment was entrusted by the law.

The other half of the plaintiff's case is that its franchise was valued at its full cash value. It might even require consideration, if necessary, whether it ought not to be shown further that the appellants, in valuing the franchise, consciously adopted a different standard from that which they understood to be adopted in the counties. On the foregoing questions one of the three appellants testified that he had dissented from the majority on several occasions, believing that the assessments were higher than those for other kinds of property, and that he understood that the majority assessed

the franchise at its full value.  One testified that he thought
at the time, and still thought, that the franchise was valued
lower than it ought to be.  The third was not explicit, but
showed that the valuation was reduced after hearing.  Differ-
ent well known modes were used in approaching the valua-
tion, but probably there was an element of arbitrary judg-
ment at the end.  This certainly was the case in regard to the
proportion of mileage in the State, which, by the statutes, was
to "be considered" in fixing the value of the franchise, and
which the appellants contend was underestimated so much
as to compensate for any other mistake, if there was any,
which is denied.

We need not stop to show that so much of the bill as seeks
an injunction against collecting the state tax, and the portion
of the decree which orders a receipt to be executed on the part
of the State, cannot be maintained.  See *Coulter* v. *Weir,* 127
Fed. Rep. 897, 906, 912.  On the other hand, in a proper case,
a bill may be brought to restrain apportionment and certifica-
tion to the counties.  *Fargo* v. *Hart,* 193 U. S. 490, 495, 503.
The question is whether such a case has been made out, and
we may assume for purposes of decision, without deciding,
that, if we otherwise agreed with the railroad company's con-
tention, the injunction might be granted, although the fran-
chise was valued as the law required in every respect except
in the proportion which the assessment bore to the other
valuations.  The decisions are not agreed upon this point.

We have stated as much as we deem necessary to the answer-
ing of the question just put.  It must be obvious on even that
short statement how uncertain are the elements of the evidence
and in what unusual paths it moves.  On the face of their
records the proceedings of the defendants, of the county
assessors and of the equalizing board all are regular.  If it be
a fact that the franchise of a Kentucky corporation is taxed at
a different rate from the tangible property in the State, there
can be no question that the State had power to tax it at a
different rate, so far as the Constitution of the United States

is concerned. *Bell's Gap R. R.* v. *Pennsylvania,* 134 U. S. 232; *Merchants' & Manufactu. ers' Bank* v. *Pennsylvania,* 167 U. S. 461, 464; *Magoun* v. *Illinois Trust and Savings Bank,* 170 U. S. 283, 295. It is doubtful, at least, if any further question should have been asked in this case. *Missouri* v. *Dockery,* 191 U. S. 165. But as the claim of right under the United States Constitution was not merely colorable, *Penn. Mut. Life Ins. Co.* v. *Austin,* 168 U. S. 685, 695, and as the evidence is here, we have considered the evidence also, and our conclusion from that, as well as from the law, is that the bill must be dismissed.

Looking first at the assessment of the franchise, there is no such certainty that it was made on a different scale of values from that adopted elsewhere, as would warrant an attack upon it under the Fourteenth Amendment, even if otherwise that attack could be maintained. But the supposed infringement of the Fourteenth Amendment is the only ground on which the railroad company could come into the Circuit Court, and if that ground fails, and obviously fails; the court should be very cautious, at least, in interfering with the State's administration of its taxes upon other considerations which would not have given it jurisdiction.

The undervaluation in the counties, looked at from the point of view just indicated, also does not appear to have been such as to warrant the action of the court. It is not contended that a mere undervaluation would be enough. It is admitted that it must have been systematic and intentional. There is, no doubt, a natural inclination to think such an undervaluation probable when it is suggested. But what is the proof? The state constitution, whatever the statutes may have said, seems popularly to have been understood to have made a great change in the law. Practice before its adoption, therefore hardly can raise a presumption as to practice afterwards, even on the liberal assumption that it properly could be considered in evidence. It is obvious that the accidental sales in a given year may be a misleading guide to average values,

apart from the testimony that some at least of the conveyances did not report true prices, yet they furnish the chief weapon of attack. The testimony as to the board of equalization taking eighty per cent of the reported sales, was explained by the members of the board. It would be going very far to assume that they were committing perjury because to another mind the sales seemed more significant and the explanations not very good. Inequality, we repeat, is nothing, unless it was in pursuance of a scheme. To make out that scheme the anomalous course was followed of putting members of a tribunal established by law upon the witness stand to testify to the operations of their minds in doing the work entrusted to them. *Fayerweather* v. *Ritch*, 195 U. S. 276, 306, 307. But the prevailing testimony was that no such scheme was entertained.

Whatever we may surmise or apprehend, making allowance for a certain vagueness of ideas to be expected in the lay mind, for the reasonable differences of opinion among the most instructed and competent men, and for the uncertainty of the elements from which a judgment was to be formed in the first instance, considering the still greater uncertainty of those from which the local judgment must be controlled, if at all, by persons having only the printed record before them, considering further that to maintain the bill imputes perjury to many witnesses whose character is not impeached, and finally recalling once more that we are dealing with a case that properly was not cognizable in the Circuit Court, we are of opinion that the bill must be dismissed.

*Decree reversed.*