SOL LUIS DESCARTES, TREASURER OF PUERTO RICO, Petitioner, v. TAX COURT, Respondent; TRIGO HERMANOS, INC., Intervener.

No. 279. Argued December 3, 1951.—Decided March 31, 1952.

*Federico Tilén, Acting Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney General,* for petitioner. *McConnell & Valdés* and *Elmer Toro Lucchetti* for intervener, plaintiff in the main action.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On August 10, 1951, Trigo Hnos., Inc., intervener herein, filed a complaint in the Tax Court containing two causes of action.

By the first it requested—after alleging the refusal of the Treasurer—the reimbursement of the amount of $13,953.75 that plaintiff paid to the Treasurer of Puerto Rico in different instalments and dates, from February 25, 1948 until May 31, 1951, as taxes collected under the Spirits and Alcoholic Beverages Act on the product known as Tuborg Malt, imported by plaintiff.

It claimed reimbursement on the ground that although the Treasurer had collected from plaintiff the aforesaid tax on Tuborg Malt, it had neither previously nor subsequently collected that same tax on other local malts: Corona Malt, India Malt, Caribe Malt, and Tropical Malt, although in all respects similar to the Tuborg Malt, with the same chemical and physical properties, according to the result of an analysis made by a chemist of the Bureau of Alcoholic Beverages and Narcotics of the Department of Finance together with plaintiff's chemist, of samples taken from said products in different establishments of the capital. It alleged that the administrative practice of the Treasurer of collecting taxes on the Tuborg Malt and not on the other malts produced

in Puerto Rico, notwithstanding their being similar, is illegal, arbitrary, and erroneous, for the following reasons:

"(a) The Treasurer of Puerto Rico applies administrative rules in the case of plaintiff different from those employed in the case of local malts, taking as a basis for his determination in plaintiff's case the samples obtained in commercial establishments of malt produced and bottled in Denmark and imported to the Island whereas in the case of local brand malts he bases his determination on analyses and tests made of samples sent to the Bureau of Alcoholic Beverages by the different malt-producing plants, which samples are taken, according to the best knowledge and understanding of plaintiff, before the malt is pasteurized and bottled.

"(b) The discrimination established by the Treasurer of Puerto Rico in collecting taxes on the Tuborg Malt under the Spirit and Alcoholic Beverages Act and not collecting the same tax on the local brands, although they are similar products with the same physical and chemical properties, constitutes a violation of § 3 of the Organic Act which forbids any discrimination between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico.

"(c) The discrimination established by the Treasurer of Puerto Rico in collecting taxes on the Tuborg Malt under the Spirit and Alcoholic Beverages Act and not collecting the same tax on the local brands, although the products are similar with the same chemical and physical properties, constitutes a clear violation of the constitutional right of plaintiff to enjoy the equal protection of the laws.

"(d) The discrimination established by the Treasurer of Puerto Rico in collecting tax on the Tuborg Malt under the Spirit and Alcoholic Beverages Act and not collecting the same tax on the local brands, although they are similar products with the same chemical and physical properties constitutes a violation of § 8 of said statute insofar as the same provides that taxes shall be uniform and general both for the articles produced outside and brought into Puerto Rico as for those manufactured or produced in the Island.

"(e) The Treasurer's determination and administrative practice establish an economical discrimination against plaintiff

and in favor of the local malts, giving the latter an undeserved commercial advantage since the burden of the specified tax collected from plaintiff has been and is actually borne by plaintiff, since the latter may not transfer the burden to the retail dealer nor to the consumer, because if it did, the difference in price between the Tuborg Malt and the local brands would be more than what the product can absorb in the market, and would be tantamount to putting the Tuborg Malt outside the reach of the consumer."

In the second cause of action plaintiff requested the issuance of a writ of injunction, in proper form, forbidding the collection of any tax whatsoever on Tuborg Malt under the Spirit and Alcoholic Beverages Act, or in the alternative, the issuance of a writ of mandamus directing the Treasurer of Puerto Rico to proceed to collect immediately the tax which he had failed to collect on the local brands.

After setting forth the allegations contained in the petition for reimbursement relating to the discrimination mentioned, plaintiff alleged having received another shipment of Tuborg Malt on July 22, 1951, over which the Treasurer collected and plaintiff paid on July 31—because prepayment of the tax was required by § 14 of the aforesaid Act, before a shipment could be removed from the dock—the amount of $835.31,[1] having the Treasurer insisted with plaintiff, upon being consulted by the latter, in his determination to continue collecting taxes on Tuborg Malt under the Spirits and Alcoholic Beverages Act despite his failure to collect them on the local brands.

Plaintiff also alleged that it continued and would continue importing Tuborg Malt into the Island, receiving monthly shipments of said malt with regularity; that it

---

[1] After the complaint was filed, plaintiff requested from the Treasurer —on August 23, 1951—the reimbursement of said amount and he refused it on the 29th of the same month. In the supplementary allegation of the first cause of action, filed on September 12, plaintiff also requested the reimbursement of said amount.

suffered irreparable damages as a result of the Treasurer's discrimination in the sum of $4,500 yearly, which was approximately the amount of the taxes collected on the Tuborg malt, because plaintiff had to absorb the economical impact of the same since it was unable to transfer it to the retail dealer or to the consumer since the difference in price would result in excess of what the product could absorb in the market; that if it had to continue paying the taxes every time that a shipment of said product came into the Island in order to claim the reimbursement and then resort to the court, it would require a multiplicity of suits which would prejudice the business and economical status of plaintiff. Finally, that if it were decided that a writ to review a denial of a petition for refund, as provided by Act No. 235 of May 10, 1949 (Sess. Laws, p. 732), is not the correct proceeding which plaintiff may use to protect its constitutional rights as well as its right to a uniform and general application of the Spirit and Alcoholic Beverages Act, plaintiff would lack an adequate remedy at law to protect itself from the arbitrary discrimination to which it had been subjected by the Treasurer.

On October 19, 1951, and alleging that on the following November 1, S. S. Hermes would arrive at San Juan with 200 boxes of Tuborg Malt containing 24 bottles each, consigned to plaintiff, and the Treasurer not having changed his mind about collecting the tax on the Tuborg Malt, it would be unable to remove said shipment "without paying the tax demanded by the Treasurer, although the question of whether the tax was proper was being litigated," plaintiff requested the lower court to issue, in aid of its jurisdiction, a restraining order enjoining the Treasurer from collecting the aforesaid taxes until the final determination of the petition for injunction contained in the second cause of action of the complaint. The court summoned the Treasurer to appear on the 26th to show cause why the requested order

should not be issued. On that date,[2] after hearing the evidence, the court issued a restraining order forbidding the collection of tax on the 200 boxes of Tuborg Malt already cited, after furnishing bond for $800. Said order, using the court's own term, was issued "considering that the proceeding for reimbursement provided by Act No. 235 of May 10, 1949 were not the adequate remedy whereby plaintiff could invoke our jurisdiction for the determination of the question of law that might arise as the result of the discrimination established by defendant between the local malts and Tuborg Malt and obtain a judicial decision as to the propriety of the assessment and collection of taxes involved herein." Motion for reconsideration was denied. The writ of certiorari was issued due to the importance of the question involved.[3]

We need not stop to examine all the grounds on which the petition for certiorari is based. Injunction does not lie in this jurisdiction for the purposes invoked, at least not at this stage of the proceeding. Let us see.

 The U. S. Supreme Court, in a long line of decisions, has consistently held that a taxpayer is submitted to an unconstitutional discrimination—even though his property is not assessed at more than its full cash value—if an undervaluation is given to property of the same class belonging to other persons; but unless it is shown that said undervaluation was intentional and systematic, the inequality in

---

[2] On that same date the Treasurer answered the complaint and in a separate paragraph objected to the issuance of the restraining order. The ground (c) for said objection is as follows: "Because plaintiff may resort to an ordinary action at law to litigate the taxes in controversy, since it can pay them and request the reimbursement; and proof of it is that this case arose precisely because plaintiff had paid some particular taxes and requested the reimbursement of the same."

[3] The certiorari writ was issued by the Acting Judge on November 1, 1951 and in that same date the restraining order rendered on October 26 of the same year was set aside, "until further orders from the Supreme Court."

the assessment would not be deemed as violating the clause on equal protection of the laws, for mere mistakes in judgment or discretion on the part of the tax officers would not support an allegation of discrimination. *Coulter* v. *Louisville & Nashville R. R. Co.*, 196 U. S. 599, 49 L. ed. 615; *Chicago B. & Q. Ry. Co.* v. *Babcock*, 204 U. S. 585, 51 L. ed. 636; *Raymond* v. *Chicago Traction Co.*, 207 U. S. 20, 52 L. ed. 78; *Sunday Lake Iron Co.* v. *Wakefield*, 247 U. S. 350, 353, 62 L. ed. 1154; *Sioux City Bridge* v. *Dakota County*, 260 U. S. 441, 67 L. ed. 340; *Southern Ry. Co.* v. *Watts*, 260 U. S. 519, 526, 167 L. ed. 375, 387; *Cumberland Coal Co.* v. *Board of Revision*, 284 U. S. 23, 76 L. ed. 146; *Iowa-Des Moines Bank* v. *Bennett*, 284 U. S. 239, 76 L. ed. 265; *Hillsborough* v. *Cromwell*, 326 U. S. 620, 90 L. ed. 358 and *Wheeling Steel Corp.* v. *Glander*, 337 U. S. 562, 93 L. ed. 1554.

The decisions already mentioned are based on the rule that when a state law fixes an *ad valorem* tax on a property in a particular proportion, the systematic and intentional valuation of the property subject to the tax, at a level lower than the one imposed on a particular taxpayer on a property of the same class, constitutes a discrimination against the latter, in violation of the clause on equal protection of the laws. Consequently, to eliminate the inequality and discrimination when the State does not itself remove it, the taxpayer has the right to seek from the tax officer in charge of the assessment, a revision of the valuation given to his property and reduce it to the level of other property of the same class assessed, without being bound to institute any proceeding whatsoever in order to seek an upward revision of the taxes of the property belonging to other taxpayers, for to demand such a thing would actually be, to deny him an adequate remedy for the protection of his rights. *Hillsborough* v. *Cromwell*, *supra*.

The federal courts have granted the relief of injunction only where the State laws have not offered the taxpayer an

adequate remedy for such protection. *Raymond* v. *Chicago Traction Co., supra.* It has likewise happened in suits for declaratory decrees on the unconstitutionality of the assessment made. *Hillsborough* v. *Cromwell, supra.* But they have denied relief by way of injunction when the State laws provide an adequate remedy, having decided that the suit for reimbursement of taxes unlawfully collected is adequate to recover the tax paid above the level of valuation given to the rest of the property of the same class. *Raymond* v. *Chicago Traction Co., supra; Singer Sewing Mach. Co.* v. *Benedict,* 229 U. S. 482, 57 L. ed. 1288; *Baker* v. *Atchison T. & S. F. Ry. Co.* (C. A. 10, 1939), 106 F. 2d 525. The federal courts have been just as reluctant to interfere by way of declaratory judgments, by the same reasons adduced to restrain the use of injunction as relief. *Great Lakes Co.* v. *Huffman,* 319 U. S. 293, 87 L. ed. 1407; *Paul Smith Const. Co.* v. *Buscaglia,* 140 F. 2d 900. But under the case law cited, the taxpayer does not escape the obligation of paying the taxes which he is lawfully bound to satisfy, once they have been reduced to the proper level, that is, once the discrimination has been eliminated. Nothing in our decisions may be construed in the sense that when a tax officer fails to exact a *tax* from persons alleged to owe it—as in the case at bar—all others who are subject to the levy are in virtue of such omission exempt. *Cf. San Juan Trading Co.* v. *Sancho,* 114 F. 2d 969.

In *Liggett Co.* v. *Lee,* 288 U. S. 517, 77 L. ed. 929, the principle announced in the cases previously cited in connection with the systematic and intentional discrimination in the assessment of the property subject to taxation is differentiated from the rule that must prevail when there is omission or negligence in the collection of a tax.

As the right to the equal protection of the laws is the right to equal treatment *Hillsborough* v. *Cromwell, supra,* a taxpayer can not escape from the consequences of the Act

which imposes a tax merely because the officer fails to collect the same from other persons equally liable. If the product is taxable, the tax officer appointed by law has the ministerial duty to perform his work and if he fails to do so the person prejudiced by the omission or negligence of the officer in the collection of the tax, may resort to a competent court by way of mandamus to enforce the collection of said tax from other persons, and that would be an adequate remedy to guarantee him an equal treatment with relation to others in a similar situation.

■■ In the case at bar the answer of the Treasurer contends that the malts produced in Puerto Rico are not taxable because they contain no alcohol, as the Tuborg Malt, a foreign product, does. It may hardly be alleged that an administrative decision of the Treasurer as to the tax exemption of certain products, when said decision is based on facts that if true would fully justify his position, is equivalent to a discrimination within the meaning of § 3 of the Organic Act in that part relating to the imposition of the internal revenues by the Legislature of Puerto Rico which provides ". . . That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico." However, the case herein is not being considered on its merits. In this certiorari we are confined to determining whether the restraining order issued by the Tax Court enjoining the Treasurer from collecting the corresponding taxes [4] on the Tuborg Malt shipment which arrived at Puerto Rico in or about November 1, 1951, must be set aside definitely. Therefore, we merely hold that under the state of our legislation and our decisions,[5] the injunction—and con-

---

[4] Section 4, paragraph 4 of Act No. 6 of June 30, 1936, as amended by No. 34 of December 7, 1942.

[5] Act of March 8, 1906 regarding Injunctions as amended in par. 3 of its § 4 by Act No. 1 of February 25, 1946; *Fernández* v. *Buscaglia, Treas.*, 60 P.R.R. 528.

sequently the restraining order under review herein—does not lie, and the same should be set aside, that there exists an adequate remedy at law for the taxpayer to enforce his right to the equal protection of the laws such as the writ of mandamus [6] within which all the findings of fact and questions of law which may be pertinent to the controversy will be heard; and that, to such end, having the taxpayer requested the Tax Court in his second cause of action, that if injunction did not lie it should issue a writ of mandamus ordering the Treasurer to collect the corresponding taxes on the local malts, said second cause of action should be treated as of a mandamus proceeding and the proper provisions at law and according to the facts should be made, without it being understood that we are prejudging the propriety of the reimbursement sought in the first cause of action.

The restraining order will be set aside.

---

[6] Act No. 2 of February 25, 1946, by which taxpayer's suit is forbidden, has nothing to do with the case herein.