SOL LUIS DESCARTES, TESORERO DE PUERTO RICO, peticionario;
v. TRIBUNAL DE CONTRIBUCIONES, demandado; TRIGO HER-
MANOS, INC., interventora.

Núm. 279.—*Sometido:* Diciembre 3, 1951. *Resuelto:* Marzo 31, 1952.

*Hon. Procurador General Interino Federico Tilén* y *Manuel J. Medina Aymat, Procurador General Auxiliar,* abogados del peticionario; *McConnell & Valdés* y *Elmer Toro Lucchetti,* abogados de la interventora, querellante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El 10 de agosto de 1951 la aquí interventora, Trigo Hnos., Inc., acudió al Tribunal de Contribuciones con demanda contentiva de dos causas de acción.

Por la primera solicitó—luego de alegar la denegatoria previa por el Tesorero—el reintegro de la suma de $13,953.75 que la demandante pagó al Tesorero de Puerto Rico en distintas partidas y fechas, desde el 25 de febrero de 1948 hasta el 31 de mayo de 1951, por concepto de arbitrios cobrados bajo la Ley de Espíritus y Bebidas Alcohólicas sobre el producto conocido por Malta Tuborg, importado por la demandante.

Como fundamento para ello alegó que no obstante haber cobrado el Tesorero los indicados arbitrios a la demandante sobre el producto Malta Tuborg, no había cobrado ni cobraba los arbitrios correspondientes a otras maltas producidas en Puerto Rico: Malta Corona, Malta India, Malta Caribe y Malta Tropical, a pesar de ser éstas en todo sentido y respecto productos similares a la Malta Tuborg, con las mismas propiedades químicas y físicas de esta última, según el resultado de un análisis realizado conjuntamente por un químico del Negociado de Bebidas Alcohólicas y Narcóticos del Departamento de Hacienda y un químico de la demandante, de muestras tomadas de dichos productos en diferentes establecimientos de la Capital. Alegó que la práctica administrativa del Tesorero de cobrar los impuestos sobre la Malta Tuborg y no cobrarlos sobre las maltas producidas en Puerto

Rico, a pesar de ser ambas productos similares, es ilegal, arbitraria y errónea, por los siguientes fundamentos:

"(a) El Tesorero de Puerto Rico aplica normas administrativas en el caso de la demandante distintas a las que usa en el caso de las maltas producidas en el país, tomando como base para su determinación en el caso de la demandante las muestras obtenidas en establecimientos comerciales de malta producida y embotellada en Dinamarca y transportada al país, mientras que en el caso de las maltas producidas en la Isla basa su determinación en análisis y pruebas hechas de muestras enviadas al Negociado de Bebidas Alcohólicas por las distintas plantas productoras de malta, las cuales se toman según el mejor saber y entender de la demandante de la malta antes que la misma sea pasterizada y embotellada.

"(b) El discrimen establecido por el Tesorero de Puerto Rico al cobrar impuestos a la Malta Tuborg bajo la Ley de Espíritus y Bebidas Alcohólicas y no cobrar los mismos impuestos a las maltas producidas en el país, no obstante tratarse de productos similares y contentivos de las mismas propiedades químicas y físicas, constituye una violación a la Sección 3 de la Ley Orgánica que prohibe el discrimen entre los artículos importados de los Estados Unidos o de países extranjeros y los artículos similares producidos o manufacturados en Puerto Rico.

"(c) El discrimen establecido por el Tesorero de Puerto Rico al cobrar impuestos a la Malta Tuborg bajo la Ley de Espíritus y Bebidas Alcohólicas y no cobrar los mismos impuestos a las maltas producidas en el país, no obstante tratarse de productos similares y contentivos de las mismas propiedades químicas y físicas, constituye una clara violación al derecho constitucional de la demandante al disfrute de la igual protección de las leyes.

"(d) El discrimen establecido por el Tesorero de Puerto Rico al cobrar impuestos a la Malta Tuborg bajo la Ley de Espíritus y Bebidas Alcohólicas y no cobrar los mismos impuestos a las maltas producidas en el país, no obstante tratarse de productos similares y contentivos de las mismas propiedades químicas y físicas, constituye una violación al artículo 8 de dicho estatuto en tanto en cuanto el mismo dispone que los impuestos serán uniformes y generales tanto para los artículos que se produzcan en el exterior y se introduzcan en la Isla, como para los que se fabriquen o produzcan aquí.

"(e) La determinación y práctica administrativa del Tesorero establecen un discrimen económico en contra de la demandante y a favor de las maltas producidas en el país, dándole así a éstas una ventaja comercial inmerecida, ya que el peso de los referidos impuestos cobrados a la demandante lo sufrió y sufre la propia demandante, toda vez que no le es posible traspasarlo al detallista ni al consumidor debido a que, de hacerlo, el diferencial en precio entre la Malta Tuborg y las maltas locales sería en exceso de lo que puede absorber el producto en el mercado, y equivaldría a poner la Malta Tuborg fuera del alcance del consumidor."

Por la segunda causa de acción solicitó la expedición de un auto de *injunction*, en forma apropiada, prohibiendo el cobro de impuesto alguno sobre la Malta Tuborg bajo la Ley de Espíritus y Bebidas Alcohólicas, o, en la alternativa, la expedición de un auto de *mandamus* dirigido al Tesorero de Puerto Rico para que proceda a cobrar inmediatamente los impuestos dejados de cobrar a las maltas locales.

Luego de reproducir las alegaciones contenidas en la solicitud de reintegro relativas al discrimen ya indicado, la demandante alegó haber recibido el 22 de julio de 1951 otro embarque de Malta Tuborg, sobre el cual el Tesorero cobró y la demandante pagó el 31 de julio—por ser requisito bajo el artículo 14 de la ley ya citada el previo pago de los impuestos antes de poder levantar dicho embarque del muelle—la suma de $835.31,(1) habiendo el Tesorero reiterado a la demandante, a consulta de ésta, su determinación de continuar cobrando impuestos sobre la Malta Tuborg bajo la Ley de Espíritus y Bebidas Alcohólicas aun cuando no los cobra sobre las maltas producidas en el país.

Alegó también que continuaba y habría de continuar importando Malta Tuborg a la isla, recibiendo con regularidad

---

(1) Luego de radicada la demanda, la demandante solicitó del Tesorero —en 23 de agosto de 1951—el reintegro de dicha suma y éste lo denegó el 29 del mismo mes. En alegación suplementaria de la primera causa de acción, radicada el 12 de septiembre, la demandante solicitó también el reintegro de dicha suma.

embarques de dicha malta todos los meses; que sufría daños irreparables con el discrimen del Tesorero en la suma de $4,500 anuales a que aproximadamente ascendían los impuestos cobrados sobre la Malta Tuborg, por tener la demandante que absorber el impacto económico de los mismos al no poder pasarlos al detallista o público consumidor ya que el diferencial en precio resultaría en exceso de lo que podía absorber el producto en el mercado; que de tener que continuar pagando los impuestos cada vez que llegue a la isla un embarque de dicho producto para solicitar el reintegro y acudir entonces al tribunal, se incurriría en una multiplicidad de pleitos, lo que sería lesivo al negocio y estado económico de la demandante. Por último, que si se resolviera que el procedimiento de revisión de una denegatoria de reintegro, según lo provee la Ley núm. 235 de 10 de mayo de 1949 ((1) pág. 733), no es el correcto para la demandante litigar y proteger sus derechos constitucionales así como su derecho a una aplicación uniforme y general de la Ley de Espíritus y Bebidas Alcohólicas, la demandante carecería de un remedio adecuado en ley para protegerse del discrimen arbitrario de que es objeto por parte del Tesorero.

El 19 de octubre de 1951, y alegando que el día 1ro. de noviembre siguiente llegaría a San Juan el vapor Hermes con 200 cartones de Malta Tuborg de 24 botellas cada uno, consignados a la demandante, y que no habiendo el Tesorero alterado su determinación de cobrar a la demandante impuestos sobre la Malta Tuborg ésta se vería impedida de levantar dicho embarque "sin pagar los arbitrios requerídosle por el Tesorero, a pesar de estarse litigando la procedencia de los mismos", la demandante solicitó del tribunal inferior que en apoyo de su jurisdicción dictara una orden de entredicho prohibiendo el cobro de los referidos impuestos hasta la resolución en su fondo de la solicitud de injunction contenida en la segunda causa de acción de su demanda. El tribunal citó al Tesorero para el 26 a mostrar causas por las

cuales no debía dictarse la orden solicitada. En esa fecha,([2]) luego de oír prueba, dictó la orden de entredicho prohibiendo el cobro de los arbitrios sobre los 200 cartones de Malta Tuborg ya referidos, previa prestación de una fianza de $800. Dicha orden, según sus propios términos, se expidió "en consideración de que pudiera resultar que el procedimiento de reintegro provisto por la Ley núm. 235 de 10 de mayo de 1949 no fuera el remedio adecuado para permitir a la demandante invocar nuestra jurisdicción para la determinación de la cuestión de derecho que pueda surgir como resultado de la diferenciación establecida por el demandado entre las maltas locales y la Malta Tuborg y obtener una decisión judicial en cuanto a la procedencia de la imposición y cobro de los arbitrios aquí envueltos." Solicitada la reconsideración, ésta fué denegada. El auto de *certiorari* fué expedido por la importancia de la cuestión planteada.([3])

No es necesario examinar todos los fundamentos que sirven de base a la solicitud de certiorari del Tesorero. El injunction no procede en esta jurisdicción para los fines invocados, por lo menos en esta etapa del procedimiento. Veamos.

En una larga serie de decisiones el Tribunal Supremo Nacional ha sostenido consistentemente que un contribuyente es sometido a un discrimen inconstitucional—aun cuando su propiedad no sea tasada en más de su valor total—si se da una valoración más baja a propiedad de la misma clase perteneciente a otras personas; pero a menos

---

([2]) En esa misma fecha el Tesorero contestó la demanda y en escrito aparte se opuso a que se dictara la orden de entredicho. El fundamento (c) de dicha oposición es el siguiente: "Porque la demandante tiene un recurso ordinario en ley para litigar los arbitrios en controversia, toda vez que puede pagarlos y solicitar su reintegro; y prueba de ello es que este caso surgió precisamente con motivo de haber la demandante pagado determinados arbitrios y solicitado el reintegro de los mismos."

([3]) El auto de certiorari fué expedido por el Juez de Turno el día 1ro. de noviembre de 1951 y en esa misma fecha se dejó sin efecto la orden de entredicho dictada el 26 de octubre del mismo año, "hasta ulterior orden del Tribunal Supremo."

que se demuestre que esa valoración más baja fué intencional y sistemática, la desigualdad en la tasación no se estimará que viola la cláusula sobre igual protección de las leyes, pues meros errores de juicio o de apreciación no sostendrían una alegación de discrimen. *Coulter* v. *Louisville & Nashville R.R. Co.*, 196 U.S. 599, 49 L. ed. 615; *Chicago B. & Q. Ry. Co.* v. *Babcock*, 204 U.S. 585, 51 L. ed. 636; *Raymond* v. *Chicago Traction Co.*, 207 U.S. 20, 52 L. ed. 78; *Sunday Lake Iron Co.* v. *Wakefield*, 247 U. S. 350, 353, 62 L. ed. 1154; *Sioux City Bridge* v. *Dakota County*, 260 U. S. 441, 67 L. ed. 340; *Southern Ry. Co.* v. *Watts*, 260 U. S. 519, 526, 67 L. ed. 375, 387; *Cumberland Coal Co.* v. *Board of Revision*, 284 U.S. 23, 76 L. ed. 146; *Iowa-Des Moines Bank* v. *Bennett*, 284 U. S. 239, 76 L. ed 265; *Hillsborough* v. *Cromwell*, 326 U.S. 620, 90 L. ed. 358 y *Wheeling Steel Corp.* v. *Glander*, 337 U. S. 562, 93 L. ed. 1554.

El principio sobre el cual descansan las decisiones ya mencionadas es el de que cuando una ley estatal fija una contribución *ad valorem* sobre la propiedad en determinada proporción, la sistemática e intencional valoración de la propiedad sujeta a la contribución, a un nivel más bajo que aquél tomado para determinar la contribución sobre propiedad similar de un contribuyente en particular, constituye un discrimen contra éste, en violación de la cláusula sobre igual protección de las leyes. En consecuencia, para eliminar la desigualdad y el discrimen, cuando el estado no lo hace a iniciativa propia, el contribuyente tiene derecho a que la entidad a cargo de la tasación revise la valoración dada a su propiedad y la rebaje al nivel de tasación que se dió a la demás propiedad sujeta a la contribución, sin que venga obligado el contribuyente a iniciar procedimiento alguno para obtener que la tasación de las demás propiedades se eleve a un nivel igual a la de la suya, pues exigirle tal cosa sería, en efecto, negarle un remedio eficaz para la protección de sus derechos. *Hillsborough* v. *Cromwell*, supra.

El *injunction* únicamente se ha concedido por las cortes federales cuando las leyes estatales no han ofrecido al contribuyente un remedio adecuado para tal protección. *Raymond* v. *Chicago Traction Co.*, supra. Igual ha ocurrido en cuanto a decretos declaratorios sobre la inconstitucionalidad de la tasación hecha. *Hillsborough* v. *Cromwell*, supra. Pero se han negado a intervenir por medio del *injunction* cuando las leyes del estado proveen remedio adecuado, habiéndose resuelto que el procedimiento de reintegro de contribuciones pagadas ilegalmente es adecuado para obtener la devolución del exceso de contribuciones pagadas por sobre el nivel de la valoración dada a la demás propiedad de la misma clase. *Raymond* v. *Chicago Traction Co.*, supra; *Singer Sewing Mach. Co.* v. *Benedict*, 229 U. S. 481, 57 L. ed. 1288; *Baker* v. *Atchison, T. & S. F. Ry. Co.* (C. A. 10, 1939), 106 F. 2d 525. E igual de renuentes, y por las mismas razones para no hacerlo mediante injunctions, han estado las cortes federales a intervenir a través de sentencias declaratorias. *Great Lakes Co.* v. *Huffman*, 319 U.S. 293, 87 L. ed. 1407; *Paul Smith Const. Co.* v. *Buscaglia*, 140 F.2d 900. Pero bajo la jurisprudencia citada, el contribuyente no escapa de la obligación de pagar las contribuciones que válidamente viene obligado a satisfacer, una vez que son reducidas a los niveles apropiados, esto es, que se ha eliminado el discrimen. Nada en dichas decisiones puede ser interpretado en el sentido de sostener que cuando un funcionario deja de cobrar un *impuesto* a personas que se alega vienen obligadas a pagarlo—como ocurre en el caso de autos—todas las demás personas sujetas a dicho impuesto quedan, como consecuencia de dicha omisión, exentas de su pago. *Cf. San Juan Trading Co.* v. *Sancho*, 114 F. 2d 969.

En *Liggett Co.* v. *Lee*, 288 U. S. 517, 77 L. ed. 929, se distingue el principio que informa la jurisprudencia anteriormente citada sobre el discrimen sistemático e intencional en

la valoración de propiedad sujeta a contribución, y el que debe regir cuando hay omisión o negligencia en el cobro de un· impuesto.

Como el derecho a la igual protección de las leyes es el derecho a un trato igual, *Hillsborough* v. *Cromwell*, supra, un contribuyente no puede escapar de las consecuencias de la ley que impone el tributo meramente porque el funcionario deje de cobrar el mismo a otras personas similarmente situadas. Si el producto es tributable, el funcionario encargado por ley de la imposición y cobro del impuesto tiene un deber ministerial de llevar a cabo su encomienda, y de no hacerlo la persona que pueda resultar perjudicada por la omisión o negligencia del funcionario en el cobro del mismo, puede acudir a un tribunal competente en solicitud de un mandamus para obligar al cobro de dicho impuesto a las demás personas, y ése sería un remedio adecuado para garantizarle un trato· igual con relación a aquéllos en situación similar.

■■ En el caso de autos la contestación del Tesorero sostiene que las maltas producidas en Puerto Rico no son tributables por no tener contenido alcohólico, como lo tiene la Malta Tuborg, producida en el extranjero. Difícilmente una determinación administrativa del Tesorero en cuanto a la no tributación de ciertos productos, cuando dicha determinación está predicada en hechos que de ser ciertos justificarían plenamente su posición, equivaldría a un discrimen dentro del significado del artículo 3 de la Ley Orgánica en aquella parte relativa a la imposición de rentas internas por la Asamblea Legislativa de Puerto Rico que provee que "... no se hará distinción alguna entre los artículos importados de los Estados Unidos o de países extranjeros y los artículos similares producidos o manufacturados en Puerto Rico." (⁴)

---

(⁴) El texto inglés dice:
". . . That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico."

Sin embargo, no estamos aquí considerando el caso en sus méritos. Estamos limitados en éste recurso a determinar si la orden de entredicho dictada por el Tribunal de Contribuciones impidiendo al Tesorero cobrar los impuestos correspondientes([5]) sobre el embarque de cerveza Malta Tuborg que llegó a Puerto Rico en o alrededor del primero de noviembre de 1951, debe ser definitivamente anulada. Por lo tanto, nos limitamos a resolver que bajo el estado de nuestra legislación y nuestra jurisprudencia([6]) el injunction —y en consecuencia la orden de entredicho que se revisa por medio de este recurso—no procede, debiendo la misma ser anulada; que existe un remedio adecuado en ley para que la contribuyente pueda hacer efectivo su derecho a la igual protección de las leyes, cual es la interposición de una acción de *mandamus*([7]) dentro de la cual se ventilarán todas las cuestiones de hecho y de derecho que puedan tener pertinencia a la controversia; y que, a tales fines, habiendo la contribuyente solicitado del Tribunal de Contribuciones, por su segunda causa de acción, que de no proceder el injunction se expidiera un auto de mandamus dirigido al Tesorero para que cobrara los impuestos correspondientes sobre las maltas producidas localmente, debe tramitarse dicha segunda causa de acción como una de mandamus y proveerse lo que en derecho y de acuerdo con los hechos corresponda, sin que en forma alguna se entienda que prejuzgamos la procedencia del reintegro solicitado por la primera causa de acción.

*La orden de entredicho será anulada.*

---

([5]) Artículo 4, inciso 4 de la Ley núm. 6 de 30 de junio de 1936 ((2) pág. 45), según enmendado por la núm. 34 de 7 de diciembre de 1942.

([6]) Ley de 8 de marzo de 1908 relativa a Injunctions, según quedó enmendada en el apartado 3 de su sección 4 por la Ley núm. 1 de 25 de febrero de 1946 ((1) pág. 3); *Fernández* v. *Buscaglia, Tes.,* 60 D.P.R. 596.

([7]) La Ley núm. 2 de 25 de febrero de 1946 ((1) pág. 7) por la cual se prohibe la acción del contribuyente (*taxpayer's suit*) no juega papel alguno en este caso.