CHICAGO GREAT WESTERN RAILWAY COM-
PANY *v.* KENDALL, GOVERNOR OF THE STATE
OF IOWA, ET AL.

CHICAGO, ROCK ISLAND & PACIFIC RAILWAY
COMPANY *v.* KENDALL, GOVERNOR OF THE
STATE OF IOWA, ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF IOWA.

Nos. 22 and 23.   Argued October 7, 1924.—Decided November 17,
1924.

1. Hearing of an interlocutory appeal from an order refusing a
   temporary injunction to restrain a tax but leaving a restraining
   order effective pending appeal, should not be delayed to await
   the coming of a second appeal on the merits, where the effect
   will be an undue delay of state action, contrary to the intent of
   Jud. Code, § 266.  P. 96.
2. When the jurisdiction of the District Court rests upon a substan-
   tial controversy under the federal constitution properly alleged by
   the bill, but the same relief would be afforded by the state con-
   stitution and laws, the case may be determined by the state rules
   without deciding the federal question.  P. 97.
3. Unjust discrimination through intentional, systematic under-
   valuation by state officials of other taxable property of the same
   class when plaintiff's property is assessed and taxed much higher,
   is ground for an injunction, preventing the taxation of his
   property at a higher rate than the property so favored.  P. 98.
4. It is not enough, however, that taxing officials have made a
   mistake, or that the court, were its judgment properly invoked,
   might reach a different conclusion as to the taxes; there must be
   a clear, affirmative showing that the difference is an intentional
   discrimination adopted as a practice.  *Id.*
5. Such discrimination being shown, the fact that the discriminating
   tax is imposed directly by a state board which deals with the
   other taxes only as a tribunal equalizing assessments between
   counties, does not prevent equitable relief.  P. 99.
6. A judgment of the District Court consisting of three judges under
   Jud. Code, § 266, refusing a temporary injunction to restrain a
   state tax, and based on a finding that in fact the tax is not shown

to result from arbitrary and intentional discrimination as alleged, and upon an exercise of that court's sound discretion in the granting or withholding of such injunctions, will not be disturbed by this Court in the absence of a very clear case against it.  P. 100.
Affirmed.

APPEALS by the two railroad companies from orders of the District Court denying motions for temporary injunctions.

*Mr. Donald Evans,* with whom *Mr. Clifford V. Cox* and *Mr. Wm. F. Riley* were on the brief, for appellant in No. 22.

*Mr. J. G. Gamble,* with whom *Mr. W. F. Dickinson, Mr. W. F. Peter* and *Mr. R. L. Read* were on the brief, for appellant in No. 23.

*Mr. Ben J. Gibson,* Attorney General of the State of Iowa, with whom *Mr. Neill Garrett,* Assistant Attorney General, was on the briefs, for appellees.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

These two bills in equity, one by the Chicago Great Western Railway Company, a corporation of Illinois, and the other by the Chicago, Rock Island & Pacific Railway Company, a corporation of Illinois and Iowa, were brought against the Governor, the Secretary of State, the Auditor and the Treasurer of Iowa, and another, constituting the Executive Council of the State, to enjoin the assessments for taxation of the railway properties of the complainants in Iowa as fixed by the Council.  The injunction was sought on the ground that although, under the laws and constitution of Iowa, all property, real and personal, including railways, must be assessed at its actual value, there was an intentional discrimination by the Executive Council against complainants, in that farm lands in the State were assessed at slightly over 38

per cent. of their actual value, while the railway of the Great Western Railway Company in the State was intentionally assessed at 111.5 per cent. of its actual value, and that of the Rock Island at 75 per cent. There were averments that the amounts involved in the cases were more than $3,000 in each. It was charged that such action was a denial to the railroad companies of the equal protection of the laws, in violation of the Fourteenth Amendment. The complainants asserted their right to relief in equity by injunction, because if the Executive Council certified their assessments and distributed them to all the counties through which the railways ran, it would entail on the companies a multiplicity of suits to vindicate their constitutional rights. Complainants moved for temporary injunctions under § 266 of the Judicial Code. The court, consisting of a circuit judge and two district judges, on the evidence adduced found that it did not disclose intentional discrimination by the state taxing tribunals, and denied the motions. Appeal was taken in both cases to this Court under § 266, and a continuance of the restraining orders originally granted on the filing of the bill was asked pending a hearing of the appeal. This was resisted but was finally allowed to the extent of enjoining upon a proper bond the Executive Council from certifying for collection, to the taxing officials of the counties through which the railways ran, assessments more than ninety-two per cent. in value of the assessments the subject of complaint. When these causes were called for hearing in this Court, application was made for a continuance, on the plea that since November, 1922, when this appeal was allowed, the issue on the complete pleadings in the District Court had been referred to a master who had found that there was intentional discrimination, and an early final hearing on the merits was probable. It was suggested that this Court would save time by awaiting the coming of a second

appeal on the merits. The counsel for the State resisted continuance and insisted that the State was embarrassed by withholding taxes due it and that it should not be delayed longer. Considering the fact that the Railroad Companies had succeeded in stopping the State from collecting part of the taxes for now more than two years in the face of a full preliminary hearing and adverse ruling by three judges, and noting the evident purpose of Congress in the enactment of § 266 to prevent undue delay in enforcing state legislation and action through federal judicial intervention, this Court has denied this request for a continuance and has heard the case.

In the cases before us, we are relieved from considering and deciding the alleged infringement of the Federal Constitution, because in view of the basis for jurisdiction of the District Court, the cases can be disposed of as a question of state law.

Jurisdiction of the bill in the *Great Western* case exists because of the diverse citizenship of the parties. The District Court therefore has jurisdiction to enforce the rights of the complainant under the state constitution and laws and prevent their violation.

Jurisdiction in the bill in the *Rock Island* case depends on the averment that the attempted assessment of complainant's railroad property in Iowa complained of was at a rate and upon a basis greater than the assessment of other property of the same class subjected to taxation in Iowa, and that the suit arises under the Fourteenth Amendment to the Federal Constitution forbidding any State to deprive any person of his property without due process of law or to deny him the equal protection of the laws. We think this averment, in view of the allegations of the bill, invoked a substantial controversy under the Federal Constitution and gave the District Court jurisdiction. Its jurisdiction thus established gave the District Court the authority to determine all questions in-

volved, including questions of state law, irrespective of the disposition of the federal question, and as the relief to which the complainant might be entitled would be the same as that which should be allowed him by the federal court upon a construction of the state constitution and laws such as he contends for, the question whether the acts complained of violated the Federal Constitution need not be decided. *Greene* v. *Louisville & Interurban R. R. Co.*, 244 U. S. 499, 508; *Ohio Tax Cases*, 232 U. S. 576, 586; *Siler* v. *Louisville & Nashville R. R. Co.*, 213 U. S. 175, 191. It follows, therefore, that in both the cases under consideration, the District Court has jurisdiction to consider and decide whether the complainants in these cases are so injured by a violation of the state constitution and laws in the taxation of their property as to entitle them to the equitable remedy of injunction against the taxing officials made defendants. The averments of both bills make a case of unjust discrimination against complainants' property in that there is an intentional, systematic undervaluation by state officials of Iowa of other taxable property of the same class, when the complainants' property is assessed and taxed at a much higher rate. In such cases, the federal authorities render it clear that the complainants may have the remedy by injunction in equity to prevent the taxation of their property at any higher rate than that imposed upon the property of those in whose favor the discrimination exists. *Cummings* v. *National Bank*, 101 U. S. 153, 160; *Greene* v. *Louisville & Interurban R. R. Co.*, 244 U. S. 499, 516; *Taylor* v. *Louisville & Nashville R. R. Co.*, 88 Fed. 350. See also *Sioux City Bridge Co.* v. *Dakota County*, 260 U. S. 441, 445, and *Sunday Lake Iron Co.* v. *Wakefield*, 247 U. S. 350, 352. It is not enough, in these cases, that the taxing officials have merely made a mistake. It is not enough that the court, if its judgment were properly invoked, would reach a different conclusion as to the taxes

imposed.   There must be clear and affirmative showing that the difference is an intentional discrimination and one adopted as a practice.

In Iowa the value of farm lands is assessed by local assessors, who fix the value of the properties under § 1305 of the Code Supplement of 1913, in the various taxing districts.   Their assessments are submitted to the local board of review of the taxing district, and that board hears the complaints on the part of the property owner or the part of the public, and makes its findings.   This action is submitted to the county board of supervisors, which as a board of equalization adjusts and equalizes the findings between the taxing districts of the county.   The results of action by the county supervisors are sent to the State Auditor, and by him are laid before the Executive Council sitting as a state board of equalization, which equalizes them so that there may be as nearly as possible uniformity as between the counties.   By § 1350 of the Code, real estate is listed and valued each odd numbered year.   Railway properties are valued for assessment in a different way from real estate under the provisions of § 1336 of the Code of 1897.   They are made upon the taxable value of the entire railway within the State and are made every year, and are distributed proportionately to the counties.   In case a railway lies partly in the State and partly without it, the estimate of the value of its entire rolling stock and movable property is made after taking into consideration the proportion which the business of that part of the railway lying within the State bears to the business of the railway without the State. By § 1334 of the Code Supplement of 1913, a railway is obliged to submit to the Council for its information many details concerning its property, tangible and intangible, upon which to base an estimate of the value of the total property.   These include the par and market values of the stocks and bonds, its net income and many other cir-

cumstances. Thus, the Executive Council assesses the value of railways in the State directly. It acts only as an equalizing tribunal, however, upon assessments on farm lands as between counties. This distinction does not prevent equitable relief. Even if the taxing tribunals were different boards and if the complaining taxpayers were intentionally discriminated against by the united action of two parts of the taxing machinery of the State, relief could be granted as shown in the authorities above cited.

It was agreed between the parties that the average value for assessing farm lands was 61 per cent. The Railway Companies contended that the rate as fixed by the Council was very much higher than this for them. The three judges in the District Court found that the Executive Council might reasonably and without arbitrary or intentional discrimination reach the conclusion that the properties of the two companies in Iowa, tangible and intangible, were not assessed by the Executive Council in proportion to their actual value substantially more than the 61 per cent. imposed on farm lands. The court pointed out that railroad values were very difficult to fix and there was a wide range within which reasonable men might differ, and after an examination of the evidence, concluded they could not find that there was any arbitrary and unconscionable difference between the values assessed upon the two kinds of property. One circumstance to which the judges below gave weight was the value ascribed to the properties of these two railway companies in Iowa by their own admissions in what is known as *Ex parte 74*, an investigation by the Interstate Commerce Commission under the Transportation Act of 1920.

It would take a very clear case upon the record to justify this Court in setting aside the conclusion of a court of three judges under § 266 upon what is solely a

question of fact and an exercise of sound judicial discretion as to the just balance of convenience in granting or withholding a temporary suspension of the operation of a state law in the collection of taxes. This Court must respect in the fullest degree the sensitiveness of Congress in hedging about the sovereign power of taxation by the States and precluding temporary federal judicial interference with it save in clear cases. The present cases are not of that character.

*Affirmed.*