**OREGON SHORT LINE R. CO. v. ROSS et al.**

District Court, D. Idaho, S. D.

Sept. 4, 1931.

H. B. Thompson, of Pocatello, Idaho, for complainant.

Fred J. Babcock, Atty. Gen., of Idaho, and Sidman I. Barber and Maurice H. Greene, Asst. Attys. Gen., for defendants.

CAVANAH, District Judge.

The Oregon Short Line Railroad Company, a taxpayer of the state, seeks to enjoin the defendants individually, and as constituting the state board of equalization of the state of Idaho, and the defendant Edward G. Gallett, auditor of the state and secretary of the board, from apportioning to the county auditors or certifying to them any portion of the assessment for taxation on its property for the year 1931 until final order of the court, on the ground that the state board of equalization did for the year 1931 arbitrarily and intentionally fix and assess the valuation of its property for the purpose of taxation at the sum of $56,884,645 and knowing thereby that an arbitrary and unlawful discrimination would be practiced against it, and alleged that its property was assessed by the board at 60.3 per cent. of its actual value, while the property of other taxpayers was assessed at 44.58 per cent. of its value, and that the discrimination was systematic and intentional, in violation of the due process and equal protection clauses of the federal Constitution (Amendment 14) and sections 2 and 5 of article 7 of the Idaho Constitution, which provides that, "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property," and that, "All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal." And further that section 3097 of the Compiled Statutes of the State of Idaho provides: "All real and personal property

subject to assessment and taxation must be assessed at its full cash value for taxation for state, county, city, town, village, school district and other purposes, under the provisions of this chapter, with reference to its value at 12 o'clock meridian, on the second Monday of January in the year in which such taxes are levied."

It is further charged by the plaintiff that the board did assess the property of other utilities generally doing an interstate business by taking the book value and capitalizing the net earnings of such utilities on a basis of 8 per cent. and assessing said property at 50 per cent. of the composite thereof, but refused without good cause to apply the same or any formula in assessing its property, and that if such formula had been applied to its property the assessed valuation thereof within the state subject to assessment by the board would have been $23,174,666, less than the amount actually fixed by the board. That by virtue of the action of the board it has arbitrarily, willfully, and knowingly denied to it the benefit of the just and lawful equalization and assessment to which it is entitled.

The defendants urge that plaintiff failed to show that its property was overvalued in contrast with the general mass of the $289,578,227 of assessed valuation in the thirty-two counties through which plaintiff's railroad line runs, as its report to the board and its evidence here contain uncertain and unreliable figures and statements upon which any discrimination whatever could be based. That its property, however, has a taxable valuation of at least $103,519,265 as set forth in its bill and in its information furnished to the board, which the board was entitled to take and base its assessment thereon of $56,884,645, and which would be 54.85 per cent. of its value, the highest percentage plaintiff could claim as to its property. That the abstract submitted here and to the board, relating to certain real property of others containing a mass of remote items and computations based thereon, does not show an accurate or full valuation of the real property from which either the board or the court could ascertain the valuation for taxation purposes. In opposition to the testimony given by the plaintiff's witnesses, the defendants assert that the board had before it information which its members had of their own knowledge of the general condition in the counties as to the earning power and valuation of the farm lands and other property together with information presented to them

by the assessors of the various counties as to valuation, which all disclose that in nearly all of the counties the valuation ran from 70 to 100 per cent. of the full value of the real property, and in view of that evidence it cannot be contended that there was any design or intention of the board to arbitrarily fix the valuation of plaintiff's property at a figure proportionately higher than the percentage at which property generally was assessed.

Applying then the contentions of the parties to the principles of law and the information which the board had and the evidence here, we must first refer to the statutes of the state relating to the manner in which valuations of property for taxation purposes must be ascertained by the board of equalization, which is: "The value at which the property would be taken in payment of a just debt due from a solvent debtor, or the amount the property would sell for at a voluntary sale made in the ordinary course of business, taken into consideration its earning power when put to the same uses to which property similarly situated is applied." Section 3104, Idaho Compiled Statutes. And further: "In ascertaining the value of any property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion any value or price for which the property would sell at auction or at forced sale, or in the aggregate with all the property in the taxing district; nor, on the other hand, shall he adopt a speculative valuation, or one based upon sales made upon the basis of a small cash payment and instalments payable in the future, but he shall value each article or piece of property by itself and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made." Section 3110, Compiled Statutes of Idaho.

The question here then is: Did the state board of equalization, when fixing the valuation of the property of the plaintiff as compared with the valuation of other property, indulge in a discrimination which was systematic and intentional, and did it fail to comply with the requirements of the statute?

Before analyzing the evidence we must consider the further principle that the good faith of the members of the board and the validity of their acts are presumed, and when attack upon the ground asserted here the burden of proof is upon the plaintiff, and it is not enough that the tax officials of the state may have made a mistake, or that the court, were its judgment properly invoked, might reach a different conclusion as to the valuations; there must be a clear, affirmative showing that the difference in the valuations complained of is an intentional discrimination adopted as a practice; and recognizing further the principle that federal judicial interference with the sovereign power of taxation by the state is precluded save in clear cases, and that the difference between valuations assessed upon two kinds of property made by the board must have been done with the intention of violating the principle of practical uniformity and based upon a discrimination which was systematical and intentional. Chicago Great Western Railway Co. v. Kendall, Governor of the State of Iowa et al., 266 U. S. 94, 45 S. Ct. 55, 69 L. Ed. 183; Southern Railway Co. v. Watts and Watts as Commissioner of Revenue et al., 260 U. S. 519, 43 S. Ct. 192, 195, 67 L. Ed. 375.

In the case of the Southern Railway Co. v. Watts et al., supra, which was a case involving the enjoining of the collection of taxes levied against certain railroad companies and where the companies claimed there was a denial of equal protection of the laws and a discrimination against them was practiced in the administering of the tax laws, it was urged by the companies that the county boards reduced real estate valuations quite generally, but the state board refused to reduce the valuation of the railroads. The court said: "The rule is well settled that a taxpayer, although assessed on not more than full value, may be unlawfully discriminated against by undervaluation of property of the same class belonging to others. Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757. This may be true, although the discrimination is practiced through the action of different officials. Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. But, unless it is shown that the undervaluation was intentional and systematic, unequal assessment will not be held to violate the equality clause. Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 353, 38 S. Ct. 495, 62 L. Ed. 1154; Chicago, Burlington & Quincy Ry. Co. v. Babcock, 204 U. S. 585, 27 S. Ct. 326, 51 L. Ed. 636; Coulter v. Louisville & Nashville R. R. Co., 196 U. S. 599, 25 S. Ct. 342, 49 L. Ed. 615; Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979."

The court further held that errors of judgment upon the part of the assessing authorities are not subject to review to enjoin the collection of the taxes, unless done with an intentional and systematic practice to discriminate.

■ But it is urged by the plaintiff that the evidence brings this case under the principle thus announced, as the board did for the year 1931 and for a number of years prior thereto adopt a practice which shows that it has intentionally fixed a valuation on plaintiff's property greater than on other property. What does the evidence disclose in that respect? First as to the valuation of plaintiff's property. The board for each three years of the period commencing with the year 1918 has fixed the valuation of its and other utilities and other property as follows:

Plaintiff's property:

1918, at $52,601.937; 1921, at $55,146,213; 1924, at $55,596,167; 1927, at $56,331,855; 1930, at $56,882,646; 1931, at $56,884,645;

Other utilities:

1918, at $21,261,861; 1921, at $21,447,602; 1924, at $24,523,491; 1927, at $27,099,254; 1930, at $30,204,923;

All other property, excepting other railroads:

1918, at $359,238,132; 1921, at $394,016,175; 1924, at $366,391,956; 1927, at $370,228,528; 1930, at $366,266,924.

These figures show that during the ten-year period the valuations of the three classes of property were all raised and some lowered at times by the board. It further appears that the valuations of other utilities' property were raised each year from 1918 to and including 1930 and other property was raised from 1918 to and including 1930 each three-year period, except 1927 when the valuation was at $370,228,528 and reduced in 1930 to $366,266,924. That record would not indicate that the board had intentionally adopted a system to discriminate against the property of the plaintiff. It shows that it gave consideration to the values based upon the information it had and did not arbitrarily single out the plaintiff's property with the intention of treating it differently than other property. Each member of the board who testified disclaimed of having any understanding to overvalue or discriminate against plaintiff's property. Something more than what has been shown must appear to bring the complaint of a taxpayer within the rule and before the court would be justified in reducing the valuations upon the contention that the board had intentionally adopted a system to discriminate against the taxpayer. Therefore I am convinced from this record that the state board of equalization has not adopted in the past any system to intentionally discriminate against the property of the plaintiff.

■ Approaching then the question as to the method adopted in arriving at the valuation of plaintiff's property for the year 1931, it is urged by plaintiff that the composite value of its property should be adopted, and, if so, the full value thereof in Idaho for the year 1931 would be $94,277,114.13, and that the assessment of $56,882,646 would be at the rate of 60.3 per cent of its composite full cash value.

The three valuations plaintiff presents are:

1. Physical or reproduction new ................ $103,603,798.41
2. Capitalization net earnings ................ 86,067,387.00
3. Market value stocks and bonds ................ 93,160,156.99

Total ................ $282,381,342.40.

And one-third thereof would be $94,277,114.13, the total value of its property in Idaho, which plaintiff insists should be accepted in arriving at the full valuation of its property. Under the information given to the board and the record here, the board was not compelled to accept this composite method and could have adopted the valuation of the "physical or reproduction new" of $103,603,798.41, for that method would give the physical property within the state and would not require taking into consideration the market value of the stocks and bonds or the capitalization net earnings, if the board were satisfied that such valuation was approximately correct, and especially is that true where the plaintiff represented to the board in its report to it that, "The entire capital stock is owned or controlled by the Union Pacific Railway Company, and, therefore, there is no market value for the stock and its market or actual value cannot be stated." This report is required to be furnished to the board by the plaintiff under the statute, and when made it certainly left the board to believe that the value of the entire capital stock of plaintiff had no market value and its actual value could not be ascertained. Yet in face of this showing the court is asked to accept the composite full cash value of plain-

tiff's property as against the judgment of, and the method adopted by, the board who were advised by plaintiff that its capital stock had no market value and could not then be ascertained. To now consider in the composite method the item of $93,160,156.99 which plaintiff now claims as the market value of its stocks and bonds, after representing to the board that on account of its entire capital stock being owned and controlled by the Union Pacific Railway Company that it had no market value, would not only be unfair to the board who did not consider it, but would be approving of a procedure in violation of the state statute which requires the plaintiff to give to the board such information upon which it could act when fixing the valuation of its property.

Of course, either one of the three methods of valuation present factors of uncertainty to a certain extent, but to now consider the composite method by including the item of valuation of stocks and bonds with the other two, the aggregate of which to be divided by three, when considered under the record here, gives no assurance of a dependable result. I have my doubt as to whether the composite method gives assurance to a more fair and dependable result when we find that the actual physical or reproduction new of plaintiff's property in the state is $103,519,265, while the claimed market value of the stocks and bonds is $93,160,156.99, and capitalization net earnings of $86,067,387, much lesser amounts than the physical reproduction new.

As to the valuation of other property than plaintiff's it is not clear as to whether the abstract relating to the same contains sufficient information to establish a dependable result, as it cannot be determined what the actual considerations were in the different instruments. Taking then the incomplete information given by the abstract and the other testimony of plaintiff, we find that the average figures do not establish that the property other than plaintiff's was undervalued, as in a number of instances it appears that property was assessed on a parity with that with which plaintiff's was assessed even after recognizing the reduction made by the board. This conclusion is borne out by the testimony of eleven county assessors, who seem to have knowledge as to values in their respective counties, as they gave as their opinion that property other than plaintiff's was assessed from 70 to 100 per cent. Members of the board stated from the information given by the county assessors to them and the knowledge they had of values in the state, the values of properties other than plaintiff's were not out of line with plaintiff's assessments, and the reductions of the valuations made for the present year by them upon agricultural lands and live stock were based upon information they had of a decrease in the earning power and values during recent years of such lands and stock, which they were warranted in doing under the knowledge they had acquired of such values.

As to other utilities there does not appear any great difference, if any, between their assessments and plaintiff's for the state auditor stated that a different method was adopted by the board which seems reasonable, when in arriving at their assessments than that urged by plaintiff's witness. So it is apparent from the record that the evidence is lacking in establishing the fact that the board, when in determining the valuation of plaintiff's property as compared with other property, acted with an intentional systematic practice or pursuant to any deliberate scheme to discriminate against it. That being the case, its judgment as to the valuations in controversy should not be disturbed by the court.

Accordingly, an order will be entered dissolving the temporary restraining order made herein and denying plaintiff's application for a temporary injunction.