526 F.2d 216
 Rev. Williams SEALS et al., Plaintiffs-Appellants,
v.
The QUARTERLY COUNTY COURT OF MADISON COUNTY, TENNESSEE, et
al., Defendants-Appellees.
 No. 75--1170.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 19, 1975.
Decided Oct. 23, 1975.
 
 Elijah Noel, Jr., Louis R. Lucas, Ratner, Sugarmon & Lucas, William E. Caldwell, Memphis, Tenn., J. Harold Flannery, Washington, D.C., Nathaniel R. Jones, New York City, for plaintiffs-appellants.
 Hewitt P. Tomlin, Jr., Waldrop, Hall, Tomlin & Farmer, Jackson, Tenn., for defendants-appellees.
 Before EDWARDS, PECK and ENGEL, Circuit Judges.
 DEWARDS, Circuit Judge.
 
 
 1
 Appellants in this case are black citizens of Madison County, Tennessee, who have joined in a class action to attack a reapportionment plan instituted by the county government of Madison County, Tennessee, on the heels of the one-man-one-vote decisions of the United States Supreme Court. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). It is clear in the light of those decisions that Madison County was badly malapportioned in its 'civil districts' from which Justices of the Peace were elected to 'the Quarterly County Court.' This last named body is the legislative body for the counties under Tennessee law.
 
 
 2
 Since we ultimately decide this appeal upon a procedural issue and remand for consideration of an issue which the District Court did not reach, we detail the federal question only to demonstrate its complexity.
 
 
 3
 In 1968 the Tennessee legislature passed a law requiring Quarterly County Courts to reapportion themselves to meet the rule of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and Hyden v. Baker, 286 F.Supp. 475 (M.D.Tenn.1968) (three-judge court). Madison County thereupon created thirteen 'County Districts' from which twenty-seven Justices of the Peace were to be elected 'county-wide.' Previously Madison County elected thirty-one Justices of the Peace--two each by the voters in each of the ten civil districts, eight by the voters in the City of Jackson, and one each by voters in the other three small incorporated towns. The significant change was that under the 1968 plan all of the Justices of the Peace, whether they were county-wide representatives in the sense of being permitted to run for election regardless of whether they lived in the county, or City of Jackson representatives in the sense that they were required to be residents of the City of Jackson, or county district representatives in the sense that they were required to live in the particular county district concerned, were thereafter elected by all who voted in the county. Since multi-member legislative elections in a single district at large are not per se violative of the Federal Constitution (See Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971)) Madison County contended (and contends) that this change was effective to cure the previous malapportionment.
 
 
 4
 Plaintiffs' challenge to this system was heard by the United States District Court for the Western District of Tennessee, Eastern Division, and denied. On appeal this court reversed in an opinion which detailed the facts of the apportionment case and required reconsideration by the District Judge under subsequent decisions by the Supreme Court in City of Petersburg v. United States, 410 U.S. 962, 93 S.Ct. 1441, 35 L.Ed.2d 698 (1973), aff'g, 354 F.Supp. 1021 (D.D.C. 1972) (three-judge court), and White v. Regester, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973).
 
 
 5
 On remand plaintiffs, by stipulation, submitted a number of other exhibits but no additional testimony was taken. They also moved to amend their complaint by adding a count seeking pendent relief under recently declared state law. See Tennessee ex rel. Jones v. Washington County, 514 S.W.2d 57 (Tenn. 1974), aff'g, 514 S.W.2d 51 (Ct.App. Tenn., Western Section 1973). The District Judge denied the amendment and decided the case on remand, which is now on appeal to us, largely on the basis of the record made at the first trial. He entered extensive findings of fact pertaining to the history of Negro and white voting in Madison County and concluded that while Madison County had a long history of racial segregation and discrimination, black residents of Madison County since 1968 had been able freely to register and vote, but had not done so. The District Judge therefore found no federal constitutional violation in the multi-member voting plan outlined above.
 
 
 6
 Plaintiffs-appellants claim that the critical findings of the District Judge are clearly erroneous and that the historic and present facts in Madison County are sufficient to meet the burden recited in White v. Regester:
 
 
 7
 The plaintiffs' burden is to produce evidence to support findings that the political processes leading to nomination and election were not equally open to participation by the group in question--that its members had less opportunity than did other residents in the district to participate in the political processes and to elect legislators of their choice.
 
 
 8
 White v. Regester, supra, 412 U.S. at 766, 93 S.Ct. at 2339.
 
 
 9
 It is clear, of course, that a single district multi-member election plan does not represent a per se violation of the United States Constitution, even where (as here) the District Court has found a long prior history of racial segregation and discrimination, and the present plan has resulted in continuing the virtual exclusion of the black racial minority from positions (elective and appointive) in county government. This record shows that in the most recent election for the Quarterly County Court one black Justice of the Peace (out of 27) was elected for the first time in 100 years. It also shows that while black residents comprise 30 percent of the population of Madison County, no blacks had been elected by the County Court to a post as a county official, and only one black (one member out of seven on the county school board) had been appointed to any of a number of important boards and commissions chosen by the County Court.
 
 
 10
 We believe that the District Judge was in error in refusing plaintiffs the opportunity to amend their complaint to allege a right to relief under state law as a pendent claim.
 
 
 11
 While we do not as an appellate court pass on the merits of the state claim sought to be advanced, we note that plaintiffs assert that the Tennessee Supreme Court case just cited squarely holds that at large election of Quarterly County Court Justices of the Peace violates both Tennessee law and the Constitution of Tennessee. If so, there is clearly no need to abstain in favor of definitive state adjudication.
 
 
 12
 Clearly, the issue sought thus to be raised and resolved derived from a common nucleus of operative fact and was so related to the federal claims that the District Court could easily have tried the state claim in the same proceeding upon remand. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
 
 
 13
 Generally, of course, the grant of leave to amend is within the discretion of the District Judge. But the Supreme Court has also noted:
 
 
 14
 Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), $$15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.
 
 
 15
 Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). (Emphasis added.)
 
 
 16
 Additionally, the United States Supreme Court has repeatedly expressed the view that where there are grounds for disposition of litigation in the federal courts other than adjudication of federal constitutional issues, such alternate grounds (including possibly dispositive state claims) should be preferred. Hillsborough v. Cromwell, 326 U.S. 620, 629, 66 S.Ct. 445, 90 L.Ed. 358 (1946); Cincinnati v. Vester, 281 U.S. 439, 448--449, 50 S.Ct. 360, 74 L.Ed. 950 (1930); Siler v. Louisville & Nashville Railroad Co., 213 U.S. 175, 193, 29 S.Ct. 451, 53 L.Ed. 753 (1909). See also Hagans v. Lavine, 415 U.S. 528, 545--549, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).
 
 
 17
 In this last case the Supreme Court has recently said:
 
 
 18
 First, it is evident from Gibbs that pendent state law claims are not always, or even almost always, to be dismissed and not adjudicated. On the contrary, given advantages of economy and convenience and no unfairness to litigants, Gibbs contemplates adjudication of these claims.
 
 
 19
 Second, it would reasonably follow that other considerations may warrant adjudication rather than dismissal of pendent state claims. In Siler v. Louisville & Nashville R. Co., 213 U.S. 175 (29 S.Ct. 451, 53 L.Ed. 753) (1909) the Court held that the state issues should be decided first and because these claims were dispositive federal questions need not be reached:'Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons. In this case we think it much better to decide it with regard to the question of a local nature, involving the construction of the state statute and the authority therein given to the commission to make the order in question, rather than to unnecessarily decide the various constitutional questions appearing in the record.' Id., at 193 (29 S.Ct. at 455).
 
 
 20
 Siler is not an oddity. The Court has characteristically dealt first with possibly dispositive state law claims pendent to federal constitutional claims. See, e.g., Louisville & Nashville R. Co. v. Garrett, 231 U.S. 298, 303--304, 310 (34 S.Ct. 48, 50, 58 L.Ed. 229) (1913); Ohio Tax Cases, 232 U.S. 576, 586--587 (34 S.Ct. 372, 373--374, 58 L.Ed. 737) (1914); Greene v. Louisville & Interurban R. Co., 244 U.S. 499, 508--509 (37 S.Ct. 673, 61 L.Ed. 1280) (1917); Louisville & Nashville R. Co. v. Greene, 244 U.S. 522, 527 (37 S.Ct. 683, 61 L.Ed. 1291) (1917); Davis v. Wallace, 257 U.S. 478, 482, 485 (42 S.Ct. 164, 165--166, 66 L.Ed. 325) (1922); Chicago G.W.R. Co. v. Kendall, 266 U.S. 94, 97--98 (45 S.Ct. 55, 56--57, 69 L.Ed. 183) (1924); Cincinnati v. Vester, 281 U.S. 439, 448--449 (50 S.Ct. 360, 363, 74 L.Ed. 950) (1930); Hillsborough v. Cromwell, 326 U.S. 620, 629 (66 S.Ct. 445, 451, 90 L.Ed. 358) (1946). The doctrine is not ironclad, see Sterling v. Constantin, 287 U.S. 378, 393--394, 396 (53 S.Ct. 190, 193--194, 77 L.Ed. 375) (1932), but it is recurringly applied,[12]
 
 
 21
 and, at the very least, it presumes the advisability of deciding first and pendent, nonconstitutional issue.
 
 
 22
 Hagans v. Lavine, supra at 545--547, 94 S.Ct. at 1383--1384.
 
 
 23
 The District Judge also indicated that he felt the remand from this court limited his consideration to the two federal cases cited therein and we cannot be sure that absent this consideration, he would have failed to grant the requested amendment. In our view he misread the remand in this regard, since the panel of this court which entered the remand could not have known of the final state adjudication upon the Quarterly County Court election issue and, hence, could not have intended to exclude it from the District Judge's consideration.
 
 
 24
 Pendent state issue jurisdiction is founded upon the principle of judicial economy and convenience, coupled with no showing of any unfairness to litigants. Hagans v. Lavine, supra at 546, 94 S.Ct. 1372. We can conceive of no more desirable application of this principle to save judicial effort for this court, the Supreme Court of the United States, and the District Court than the exercise of it in this instance.
 
 
 25
 Reversed and remanded for allowance of plaintiffs' proposed amendment and for consideration of the pendent state law claim.
 
 
 
 [12]
 Numerous decisions of this Court have stated the general proposition endorsed in Siler--that a federal court properly vested with jurisdiction may pass on the state or local law question without deciding the federal constitutional issues--and have then proceeded to dispose of the case solely on the nonfederal ground. See, e.g., Hillsborough v. Cromwell, 326 U.S. 620, 629--630 (66 S.Ct. 445, 90 L.Ed. 358) (1946); Waggoner Estate v. Wichita County, 273 U.S. 113, 116--119 (47 S.Ct. 271, 71 L.Ed. 566) (1927); Chicago G.W.R. Co. v. Kendall, 266 U.S. 94 (45 S.Ct. 55, 69 L.Ed. 183) (1924); United Gas Co. v. Railroad Comm'n, 278 U.S. 300, 308 (49 S.Ct. 150, 73 L.Ed. 390) (1929); Risty v. Chicago, R.I. & P.R. Co., 270 U.S. 378, 387 (46 S.Ct. 236, 70 L.Ed. 641) (1926). These and other cases illustrate in practice the wisdom of the federal policy of avoiding constitutional adjudication where not absolutely essential to disposition of a case. Other decisions have addressed both the federal and state claims in random fashion, see, e.g., Atlantic Coast Line R. Co. v. Doughton, 262 U.S. 413, 421--426 (43 S.Ct. 620, 623--625, 67 L.Ed. 1051) (1923); Southern R. Co. v. Watts, 260 U.S. 519, 525--531 (43 S.Ct. 192, 195--197, 67 L.Ed. 375) (1923); but they have generally denied relief on both the federal and nonfederal grounds asserted, the nonfederal claim not being dispositive. Doughton and Watts were both written by Mr. Justice Brandeis, who in his celebrated concurring opinion in Ashwander v. TVA, 297 U.S. 288, 347 (56 S.Ct. 466, 483, 80 L.Ed. 688) (1936), relied upon Siler in summarizing the general rule that 'if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.'